NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK STAMPONE,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW WALKER (DIRECTOR OF OPERATIONS), and NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,<br><br>Defendants. | Civil Action No.: 15-6956 (JLL) (JAD)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Matthew Walker (Director of Operations) ("Director") and New York City District Council of Carpenters ("the Union") (collectively "Defendants")'s Motion to Dismiss Pro-Se Plaintiff Frederick Stampone ("Plaintiff" or "Mr. Stampone")'s Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Motion to Dismiss and dismisses Plaintiff's Complaint without prejudice.

## BACKGROUND[1]

Plaintiff, a 62 year old resident of New Jersey, has been a member of the United

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Brotherhood of Carpenters since 1978 and a member of the Union for over ten years. (ECF No. 4 ("Am. Compl." at 2-3, *see* sections "Cause of Action," unnumbered ¶ 1, "Damages, Claim Stated and Allegations," ¶ 4).) He has also been a Certified Carpenter Steward for over six years. (*Id.*) While holding a position as a Carpenter Steward, Plaintiff's last day was work was "on or about June 17, 2015." (*Id.*)

After being out of town from June 2015 to September 2015, Plaintiff called the Union's out of work list on September 8, 2015 and discovered that his Steward skill was removed from the list. (Am. Compl. at 2, *see* section "Cause of Action," unnumbered ¶ 2.) Plaintiff subsequently "put in a complaint with the Inspector General Office" and was informed that his Steward Skills were suspended for failing to attend a meeting on August 27, 2015 and being found guilty of "[u]nethical [p]ractice for not reporting hours on [his hours-reporting] device." (*Id.*) Plaintiff alleges that he was unaware of the August 27, 2015 meeting. (*Id.*)

On September 9, 2015,[2] Plaintiff sent a letter to Director Matthew Walker and the Union in order to give them a "chance to settle [the] case." (Am. Compl. at 3, *see* section "Cause of Action," unnumbered ¶ 3.)

On September 16, 2015, Plaintiff called the Pension Benefit Fund and was informed that he could "not retire because [he is] not vested." (Am. Compl. at 3, *see* section "Damages, Claim Stated and Allegations," ¶ 1.) According to the Amended Complaint, in order to be vested, a Union member must have five credits. (*Id.*) Specifically, Plaintiff alleges that he was informed that 300 hours equals one-fourth of a credit, 600 hours equals one-half of a credit, and 870 hours

---

[2] Plaintiff's Amended Complaint alleges that he sent a letter dated "Sept. 9, 2018." (Am. Compl., "Cause of Action," unnumbered ¶ 3.) However, due to the dates of other relevant correspondence in the timeline of events, it is presumed that he intended the date to reflect September 9, 2015.

equals 1 credit. (*Id.*) Pension Benefit Fund's records reflect that Plaintiff has worked a total of 4,756 hours as a Union member and has two and one-half credits. (*Id.*)

Plaintiff commenced this action on September 18, 2015. (*See* ECF No. 1 ("Compl.").) On November 9, 2015, Plaintiff filed an Amended Complaint claiming numerous causes of action and related issues, including: "440 Other Civil Rights"; violation of the Racketeer Influenced and Corrupt Organization ("RICO") Statute; "Slander, Deformation of Character, Harassment and 360 Other Personal Injury"; denial of the right to a skill; age discrimination; whistleblowing; and loss of wages. (Am. Compl. at 2, *see* section "Jurisdiction," ¶¶ 3-10.) On January 19, 2016, Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9 ("Def. Mov. Br.").) Plaintiff filed opposition on February 10, 2016. (ECF No. 12 ("Pl. Opp. Br.").) Defendants replied on February 29, 2016. (ECF No. 14 ("Reply Br.").) The matter is now ripe for resolution.

## **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Court also notes that pleadings submitted by *pro se* litigants are subject to liberal construction. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court is required to accept a *pro se* plaintiff's well-pleaded factual allegations as true while drawing reasonable inferences in his or her favor. *Capogrosso v. Sup.Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). However, a *pro se* complaint must still contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Franklin v. GMAC Mortgage*, 523 F. App'x 172, 173 (3d Cir. 2013).

## ANALYSIS

As mentioned, Plaintiff purports to assert a variety of claims throughout the Amended Complaint. Construing the Amended Complaint in a light most favorable to Plaintiff, the Court understands that Plaintiff's causes of action arise out of his pension credits and the removal of

4

his steward skill. Below, the Court individually addresses the various causes of action it is able to discern and dismisses the Amended Complaint without prejudice.

### A. Pension Credit Claim

In the Amended Complaint and Opposition Brief, Plaintiff alleges that he is questioning Pension Fund rules and being denied Pension hours.[3] (Am. Compl. at 2, *see* section "Jurisdiction," ¶ 3; Pl. Opp. Br. at 4.) While Plaintiff makes no explicit reference to the Employee Retirement Income Security Act (ERISA), it is the governing statute regarding pension-related issues. *See* 29 U.S.C. §§ 1002(3), 1003(a) (2014).

Defendants argue that they are not proper Defendants for claims related to pension credits because they are "legally distinct from the Pension Fund, which is a Taft-Hartley employee benefit fund that is jointly-managed by representative of labor and management," and do not have any authority to grant Plaintiff credits. (Def. Mov. Br. at 11.) Defendants also argue that Plaintiff has not complied with the requirements of the Employee Retirement Income Security Act ("ERISA") because he failed to "exhaust[] all available administrative remedies under the Pension Fund prior to bringing suit," and has not pled facts demonstrating Defendants' specific intent to "prevent Plaintiff from obtaining benefits." (*Id.* at 12-13.)

An employee seeking pension benefits may bring an action under ERISA to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). However, prior to filing a claim in federal court, "[u]nder ERISA a party must exhaust all of the administrative remedies available under the plan." *Henshaw v. Roofers Local No. 4 Pension Fund*,

---

[3] Plaintiff seeks "an extra 3 [Pension Fund] Credits," but Plaintiff has not established how the Court could fashion such a remedy. (Am. Compl. at 4, *see* section "Demand/Relief," ¶ 4.)

5

2006 WL 2715138, at *2 (D.N.J. Sept. 19, 2006). *See also Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . , a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."); *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir. 1984) (noting that "the federal courts have generally not entertained [ERISA actions] where the party bringing the action has failed to exhaust administrative remedies"); *Zipf v. Amer. Tel. and Tel. Co.*, 799 F.2d 889, 892 (3d Cir. 1986) (explaining that claims based on the denial of benefits cannot initially be brought in a federal court).

An exception to administrative remedy exhaustion arises when "it appears that application through the administrative process would be futile." *Henshaw*, 2006 WL 2715138, at *2. In determining futility, a court may consider:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the benefit plan administrator to comply with his own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal would be futile.

*Id.* (citing *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002)).

In this case, Plaintiff has failed to allege that he exhausted any or all administrative procedures under the Pension Fund prior to commencing this action in federal court. Specifically, the Amended Complaint does not provide any facts regarding any attempt by the Plaintiff to utilize administrative procedures. Further, Plaintiff has not provided any factual information to demonstrate that the exhaustion of administrative remedies would be futile. As such, Plaintiff's claims as related to the Pension hours and the Pension Fund shall be dismissed.

### B. Age Discrimination Claim

Defendants advance three arguments for dismissing Plaintiff's age discrimination claim. First, Defendants argue that the age discrimination claim is barred due to the Plaintiff's failure to file charges with the U.S. Equal Employment Opportunity Commission ("EEOC") prior to filing this suit. (Def. Mov. Br. at 22.) Second, Defendants argue that Plaintiff failed to allege in the Amended Complaint that his age was the "but-for" reason that Defendants took action against him. (*Id.* at 23.) Lastly, Defendants argue that Plaintiff's claim regarding his pension credits cannot form the basis for a claim under the Age Discrimination in Employment Act ("ADEA"). (*Id.* at 24.) In opposition, Plaintiff alleges that the Defendants are discriminating against him because of his age by suspending his Steward Skill, "tak[ing] his pension hours" and "trying to push [him] out now because he is over 62 years old." (Pl. Opp. Br. at 4.)

Claims related to age discrimination in employment are governed by the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621, 623 (2015). Specifically, the ADEA provides, *inter alia*, that it "shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." § 623. Prior to commencing a civil action, a plaintiff must first "exhaust his or her administrative remedies." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 111 (3d Cir. 2014). The ADEA mandates that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." § 626(d)(1). Therefore, "[a] plaintiff's obligation to timely file with the EEOC is a condition precedent to filing suit under the ADEA." *Hildebrand*, 757 F.3d at 111.

7

In the instant action, Plaintiff has failed to allege that he exhausted any or all administrative remedies prior to file an age discrimination claim in the federal court. The Amended Complaint fails to provide any information concerning efforts made by Plaintiff to file charges with the Equal Employment Opportunity Commission. Plaintiff has not fulfilled the condition precedent necessary to bring a civil action under the ADEA and, subsequently, the age discrimination claim shall be dismissed.

### C. Suspension of Plaintiff's Steward Skill Claim

1. <u>Violation of Union Constitution</u>

Defendants argue that Plaintiff's claim concerning the suspension of his Steward Skill should be dismissed for failing to state a claim under the Labor Management Relations Act ("LMRA"). (Def. Mov. Br. at 6.) To the extent that Plaintiff argues that his suspension "was in contravention of the Union's governing Constitution and By-laws," such a claim would fail under the LMRA according to Defendants because Plaintiff has not demonstrated that he "exhausted internal union remedies for challenging the suspension," as encouraged by labor policy. (*Id.*)

Though Plaintiff fails to respond to Defendants arguments directly, Plaintiff advances that a rule does not exist regarding the suspension of skills if a Union member misses a meeting and alleges that the letter requesting his presence at the meeting did not speak to such consequences if he failed to attend. (Pl. Opp. Br. at 4.)

Section 301 of the LMRA authorizes union members to bring suit in their individual capacities against labor unions for violations of collective-bargaining agreements, union constitutions, and other forms of contracts. 29 U.S.C. § 185(a). *See also Wooddell v. Int'l Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991) (explaining that "union constitutions are an

8

important form of contract between labor organizations . . . [and that union members] may bring suit on these contracts under § 301"). Furthermore, "the policy of forestalling judicial interference with internal union affairs . . . has been strictly limited to disputes arising over internal union matters such as those involving the interpretation and application of a union constitution." *Clayton v. Int'l Union, United Auto Workers*, 451 U.S. 679, 687-88 (1981). Thus, an aggrieved plaintiff is encouraged to exhaust internal union remedies prior to filing suit for challenging contractual violations. *See Orlando v. Interstate Container Corp.*, 100 F.3d 296, 299 (3d Cir. 1996) (explaining that "before resorting to a section 301 suit, an employee 'must attempt to exhaust any exclusive grievance and arbitration procedures established by . . . [a contractual] agreement'") (internal citation omitted). The failure to exhaust internal remedies may be excused by a court acting with discretion to evaluate:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689.

In so far as Plaintiff attempts to argue that the suspension of his Steward Skill contravened the Union's internal constitution and/or by-laws in violation of the LMRA, Plaintiff does not point to any specific Union documents or contractual agreements. The Amended Complaint simply fails to mention any Union-related documents. Further, Plaintiff has failed to demonstrate that he attempted to exhaust internal remedies regarding a violation of the Union constitution, as encouraged by courts in the Third Circuit. Though the Plaintiff put in a "complaint" with the Inspector General Office and submitted a letter to Defendant Walker requesting an "appeal," there

is no information concerning internal remedies, in general, and Plaintiff does not demonstrate his attempts to exhaust such internal remedies. Plaintiff also does not identify any relevant factors that could aid the Court in excusing his failure to exhaust internal remedies.

    2. <u>Improper Disciplinary Action</u>

To the extent that Plaintiff argues that the removal of his Steward Skill was an improper disciplinary action under the Labor-Management Reporting and Disclosure Act ("LMRDA"), Defendants contend that such a removal does not constitute a disciplinary action under the statute. (*Id.* at 9.) Defendants also argue that Plaintiff failed to exhaust internal union remedies prior to filing suit concerning the alleged disciplinary action. (*Id.*)

The LMRDA provides that no labor organization member "may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5) (2015). Section 411(a)(5) of the LMRDA "deals with the union-member relationship and in no way supports jurisdiction of a suit involving the employer (union)-employee (business agent) relationship." *Sheridan v. United Bd. of Carpenters and Joiners of America, Local No. 626*, 306 F.2d 152, 157 (3d Cir. 1962) (citation omitted). In *Mirra v. Highway & Local Motor Freight Drivers, Local Union 70*, 1964 U.S. Dist. LEXIS 7525, at *3-4 (D.N.J. Feb. 10, 1964), the court explicitly held that the removal of the plaintiff as a shop steward did not constitute a disciplinary action because "removal from union office, such as business agent, is not disciplinary action within the meaning of Section 411(a)(5)." Therefore, suit under Section 411(a)(5) of the LMRDA for improper disciplinary action is only proper when a plaintiff seeks to litigate issues concerning the

union-member relationship.

Even construing the Amended Complaint in a light most favorable to Plaintiff, the removal of Plaintiff's Steward Skill does not qualify as a disciplinary action under the LMRDA. Plaintiff, an employee/business agent, seeks to bring suit against the Union as his employer for removing his Steward Skill. However, such action is simply improper under Section 411(a)(5) of the LMRDA because Plaintiff is not bringing suit in response to actions relating to a union-member relationship. *See Mirra*, 1964 U.S. Dist. LEXIS 7525, at *3-4.

As a whole, Plaintiff's claim relating to the suspension of his Steward Skill fails both under the Labor Management Relations Act and the Labor-Management Reporting and Disclosure Act. As such, this claim shall be dismissed.

### D. RICO Claim

Defendants assert that Plaintiff has not adequately plead violations of federal and state Racketeer Influenced and Corrupt Organization ("RICO") statutes regarding the missing pension credits. (Def. Mov. Br. at 14.) Defendants argue that Plaintiff's allegations of "Debt by Deception" and "Exhaustion of Funds" do not constitute acts in violation of RICO and that Plaintiff has failed to allege a "pattern" of RICO activity, as required by federal and state statute. (*Id.* at 15-16.) Plaintiff further lacks standing, according to Defendants, because he has failed to allege an injury caused by RICO violations. (*Id.* at 17.)

While indirectly addressing Defendant's argument, in opposition, Plaintiff contends that the "Pension Rules set up by Defendants clearly demonstrate to the [C]ourt that this is Debt by Deception and this is not an isolate[d] incident but an ongoing occurrence."[4] (Pl. Opp. Br. at 4.)

---

[4]Plaintiff does not specifically address whether he is bringing suit under the federal or state RICO statutes. As such, the Court will address both the federal and state RICO statutes regarding Plaintiff's claim concurrently. *See In re*

Section 1962(c) of the federal RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[5] 18 U.S.C. § 1962(c) (2015). An "unlawful debt" is defined as a debt "(A) incurred or contracted in gambling activity which was in violation of the law . . . and (B) which was incurred in connection with the business of gambling in violation of the law of the United States . . . or the business of lending money or a thing of value at a rate usurious under State or Federal law." § 1961(6). "Racketeering activity" is defined to include a large variety of predicate acts. § 1961(1).

Specifically, a RICO violation requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "A pattern of racketeering activity requires at least two predicate acts of racketeering." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). *See also* § 1961(5). Further, to "prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc., v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The Supreme Court has explained that "'continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Also, a plaintiff only has standing to bring a RICO suit "if, and can only

---

*Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012) (holding that the "Complaint's federal and New Jersey RICO Claims parallel each other, and because the two RICO statutes are intended to be coextensive, we follow the District Court's approach and analyze the two claims concurrently").

[5] The New Jersey RICO statute is nearly identical to the federal statute as it provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-2 (1981).

recover to the extent that, he has been injured in his business or property by the conduct constituting the violation of RICO." *Maio v. Aetna, Inc.*, 221 F. 3d 472, 483 (3d Cir. 2000).

Here, Plaintiff's RICO claim falls short of the statutory requirements. As Plaintiff has not alleged gambling activities, it is presumed that he intends his allegations to be construed as predicate acts within Section 1961(1). However, the allegations of "Debt by Deception" and "Exhaustion of Funds" do not constitute predicate acts nor are they similar to predicate acts described in the statute. *See* § 1961(1). Plaintiff's allegations are conclusory and he fails to provide specific acts in violation of RICO. Also, although Plaintiff argues that the "Debt by Deception" practice demonstrates an ongoing occurrence, (*see* Pl. Opp. Br. at 4), Plaintiff fails to provide any specific information demonstrating a pattern of ongoing racketeering activity as required by Section § 1961(5). Again, Plaintiff's allegation of an ongoing occurrence is conclusory and unsupported by detailed information. Plaintiff's federal and state RICO claims shall be dismissed.

### E. Defamation and Slander Claims

Defendants contend that Plaintiff has not identified any "false or defamatory statement" made by either Defendant and has failed to demonstrate that any statement harming his reputation was communicated to a third party, either in writing or orally. (Def. Mov. Br. at 18-20.) In contrast, Plaintiff maintains that the suspension of his Steward Skill on his work record constitutes "Slander [and] Deformation [sic] of Character." (Pl. Opp. Br. at 2-4.)

To succeed in a defamation action, a plaintiff "must prove three essential facts: (1) that defendants made a false and defamatory statement concerning [the plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted negligently or with actual malice." *G.D. v. Kenny*, 205 N.J. 275, 292-93 (2011). Generally, a

13

defamatory statement is "one that subjects an individual to contempt or ridicule [or] one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *Id.* (internal citations omitted). Statements that are substantially true, however, are not defamatory. *Birch v. Wal-Mart Stores, Inc.*, 2015 WL 8490938, at *3 (D.N.J. Dec. 9, 2015).

A plaintiff must not assert a "vague conclusory allegation" of defamation. *Birch,* 2015 WL 8490938, at *4. *See also Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (App. Div. 1986). Instead, a plaintiff "must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Birch*, 2015 WL 8490938, at *4. Slander specifically involves the verbal communication of a defamatory statement to a third person. *Gnapinsky v. Goldyn*, 23 N.J. 243, 252 (N.J. 1957). Without the "essential element" of communication to a third person, slander is not shown. *See id.; Fatouros v. Lambrakis*, 2015 WL 5574413, at *3 n.6 (3d Cir. Sept. 23, 2015).

In the instant matter, Plaintiff fails to plead "facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Birch*, 2015 WL 8490938, at *4. First, Plaintiff has failed to identify any defamatory words or remarks made by the Defendants. Plaintiff simply states that the suspension of his Steward Skill on his record results in "slander" and "deformation of character." (*See* Pl. Opp. Br. at 2-4.) However, Plaintiff's suspension on his record represents a true statement of fact, and true statements are not defamatory. *See Birch,* 2015 WL 8490938, at *3. Next, Plaintiff does not provide any information to indicate that the alleged defamatory words or remarks were communicated to another individual orally, as required for slander, or in writing. Lastly, as Plaintiff has not demonstrated communication to a third party,

14

Plaintiff has failed to prove that Defendants acted negligently or with actual malice. Therefore, Plaintiff has failed to adequately plead his defamation and slander claims with sufficient factual allegations and his claims shall be dismissed.

### F. Whistleblowing Claim

Defendants argue that Plaintiff has failed to plead a logical whistleblowing claim. (Def. Mov. Br. at 20.) Specifically, Defendants contend that Plaintiff's claim that he was "terminated as a direct result for serving Defendants with [the] Amended Complaint" should fail because there is no causal connection between the two activities. (Am. Compl., "Damages, Claim Stated and Allegations," ¶ 6; Def. Mov. Br. at 20.) Defendants argue, *inter alia,* that, while Plaintiff's Steward Skill was suspended prior to September 8, 2015, he did not bring suit until September 18, 2015. (Def. Mov. Br. at 20.) Plaintiff does not address Defendants' arguments in his Opposition Brief, nor does he specify which statute he purports to sue under. (*See generally* Pl. Opp. Br.)

In New Jersey, whistle-blower activity includes, *inter alia*, disclosing to a "supervisor or to a public body an activity, policy or practice of the employer …that the employee reasonably believes" violates a law or is fraudulent or criminal. *See N.J.S.A.* §34:19-3(a)(1)-(2). Furthermore, an employer must take "retaliatory action against an employee" in order for there to be an actionable whistle-blowing claim. *Id.* 34:19-3(a).

Plaintiff's claim is implausible as alleged. Plaintiff asserts that he was terminated as a "direct result" from filing the Amended Complaint. However, while Plaintiff's Steward Skill was suspended at some point prior to September 8, 2015, Plaintiff did not file the Amended Complaint until November 9, 2015. (Am. Compl., at 2, *see* section "Cause of Action," unnumbered ¶ 2.) To the extent that Plaintiff intended to refer to the Original Complaint, that argument fails as well, as

15

the Original Complaint was filed after his "termination" on September 21, 2015. (*See* Compl.) Thus, the whistleblower claim temporally does not pass muster. Further, Plaintiff fails to provide information regarding whom he "blew the whistle" to or what activity he "blew the whistle" on. Plaintiff's whistleblowing claim is inadequate and shall be dismissed.

### G. Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff has failed to adequately plead the required elements of a claim for intentional infliction of emotional distress. (Def. Mov. Br. at 21.) Plaintiff does not address Defendants' arguments in his Opposition Brief.[6] (*See generally* Pl. Opp. Br.)

"Under New Jersey law, to prevail on a common law cause of action for intentional infliction of emotional distress, '[t]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.'" *Fidanzato v. Somerset*, 2012 WL 4508008, at *11 (D.N.J. Sept. 28, 2012) (quoting *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (N.J. 1988). A defendant "must intend both to do the act and to produce emotional distress." *Buckley*, 111 N.J. at 366. Additionally, "the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it." *Id.* (internal citation and quotation marks omitted).

Plaintiff's claim of intentional infliction of emotional distress cannot succeed as he fails to plead "intentional and outrageous" conduct by the Defendants and the severity of his distress. Plaintiff's claim of "Pain and Suffering" due to Defendants refusal to settle the case, in particular, cannot provide the basis for an intentional infliction of emotional distress claim. *See Fidanzato,*

---

[6] The Court acknowledges that Plaintiff did not explicitly claim "intentional infliction of emotional distress" by Defendants. However, Plaintiff's claim of "emotional stress as a direct result of the damages created by Defendants, Lack of Income, and the refusal to settle" will be construed as an attempt to claim intentional infliction of emotional distress. (Am. Compl. at 4, *see* section "Damages, Claim Stated and Allegations," ¶ 8.)

16

2012 WL 4508008, at *11 ("The Court has not found any case law that supports the preposterous notion that filing of court documents [in furtherance of a lawsuit] is both extreme and outrageous in the context of intentional infliction of emotional distress."). Plaintiff has not adequately plead a claim for intentional infliction of emotional distress and the claim shall be dismissed.

### H. Harassment Claim

Defendants argue that Plaintiff's harassment claim should be dismissed because Plaintiff fails to identify a particular harassment statute violated by the Defendants. Further, Defendants contend that, to the extent that the claim "could be construed as raising a claim for intentional infliction of emotional distress, it is both duplicative of Plaintiff's claim that he suffered 'Pain and Suffering' and unavailing." (Def. Mov. Br. at 24-25.) In opposition, Plaintiff contends that the suspension of his Steward Skill amounts to harassment. (Pl. Opp. Br. at 4.)

In New Jersey, "harassment" is not recognized as "free-standing civil cause of action for damages." *Hodge v. McGrath*, 2014 WL 6909499, at *1 (App. Div. Dec. 10, 2014). *See also Greenblatt v. Klein*, 2015 WL 1034633, at *5 (D.N.J. Mar. 10, 2015), *aff'd*, 2015 WL 8598245, at *2 (3d Cir. Dec. 14, 2015) (holding that a plaintiff failed to establish "any facts sufficient to sustain a cause of action for harassment" when he failed to cite "any federal law or statute under which his harassment claim may arise").

Here, Plaintiff's generalized claim of "harassment" must fail. Plaintiff fails to identify any specific harassment statutes that have been violated by Defendants and fails to identify why the suspension of his Steward Skill amounts to harassment. As such, Plaintiff's harassment claim shall be dismissed.[7]

---

[7] The Plaintiff also asserts a claim of "360 Other Personal Injury." (Am. Compl. at 2, *see* section "Jurisdiction," ¶ 6.) However, Plaintiff's claim appears to correspond to a claim of "Personal Injury" on the Civil Cover Sheet. Plaintiff

17

## CONCLUSION

For the reasons above, the Court grants the Motion to Dismiss and dismisses Plaintiff's Amended Complaint. Given Plaintiff's *pro-se* status, the Amended Complaint is dismissed without prejudice. Plaintiff shall have until Friday, April 22, 2016 to file a Second Amended Complaint to address the deficiencies identified herein. Failure to file a Second Amended Complaint by Friday, April 22, 2016 shall result in a dismissal *with* prejudice. An appropriate Order accompanies this Opinion.

DATED: March 4, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

fails to allege facts demonstrating that he suffered any injury to his person resulting from actions of the Defendants. Thus, this claim shall also be dismissed. The Court further acknowledges that Defendant Walker separately argued that the Amended Complaint should be dismissed as to him because he is an inappropriate Defendant. (Mov. Br. at 5-6.) Because the Court finds the Amended Complaint to be deficient for other reasons, the Court declines to address the arguments relating solely to Mr. Walker and denies this portion of the motion as moot with right to re-raise in due course.