**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK STAMPONE,<br><br>        Plaintiff,<br><br>v.<br><br>MATTHEW WALKER (DIRECTOR OF OPERATIONS), *et al.*,<br><br>        Defendants. | Civil Action No.: 15-6956 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Matthew Walker (Director of Operations) ("Director") and New York City District Council of Carpenters' ("the Union") (collectively "Union Defendants") Motion to Dismiss *pro se* Plaintiff Frederick Stampone's Third Amended Complaint ("TAC") (ECF No. 74), Defendants George Laufenberg ("Manager") and Northeast Carpenters Funds' (collectively "Funds Defendants") Motion to Dismiss Plaintiff's TAC (ECF No. 73), and Defendant New York City District Council of Carpenters Benefit Funds' ("Defendant NYC Funds") Motion to Dismiss Plaintiff's TAC (ECF No. 75), all of which are made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has a "Motion to Stay, Motion to Dismiss Defendants' Motions to Dismiss, Motion for Discovery" which this Court construes as Plaintiff's Opposition to Defendants' Motions to Dismiss. (ECF No. 85). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Motions to Dismiss and dismisses Plaintiff's Complaint with prejudice.

## I. BACKGROUND[1]

Plaintiff, a 64-year-old resident of New Jersey, has been a member of the United Brotherhood of Carpenters since 1978 and a member of the Union for over ten years. (TAC at 5-6, *see* sections "Statement of Undisputed Facts," ¶ 2, "Background History," unnumbered ¶ 1). He has also been a Certified Carpenter Steward for over eight years. (Id.). While holding a position as a Carpenter Steward, Plaintiff's last day of work was "on or about June 17, 2015." (Id.).

After being out of town from June 2015 to September 2015, Plaintiff called the Union's out of work list on September 8, 2015 and discovered that his Steward Skill was removed from the list. (TAC at 5, *see* section "Background History," unnumbered ¶ 2). Plaintiff subsequently "put in a complaint with the Inspector General Office" and was informed that his Steward Skills were suspended for failing to attend a meeting on August 27, 2015 and being found guilty of "[u]nethical [p]ractice for not reporting hours on [his hours-reporting] device." (Id.). Plaintiff alleges that he was unaware of the August 27, 2015 meeting (Id.), and that it was "Brother Cavanagh" who was meant to attend said meeting. (TAC at 7, *see* section "Statement of Undisputed Facts," ¶ 8).

On September 9, 2015, Plaintiff sent a letter to Director Matthew Walker and the Union in order to give them a "chance to settle [the] case." (TAC at 5, *see* section "Background History," unnumbered ¶ 3). On September 16, 2015, Plaintiff called the Pension Benefit Fund and was informed that he could "not retire because [he was] not vested." (TAC at 10, *see* section "Legal Argument," unnumbered ¶ 9). According to all four versions of Plaintiff's Complaints, a Union member must have five credits in order to be vested. (Id.). Specifically, Plaintiff alleges that he was informed that 300 hours equals one-fourth of a credit, 600 hours equals one-half of a credit,

---

[1] This background is derived from Plaintiff's Third Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

2

and 870 hours equals 1 credit. (Id.). Pension Benefit Fund's records reflect that Plaintiff has worked a total of 4,756 hours as a Union member and has two and one-half credits. (Id.). On March 22, 2016 Plaintiff sent a letter to Northeast Carpenters Funds requesting retirement forms. which he purportedly completed and returned. (TAC at 6, see section "Background History," unnumbered ¶ 4). He allegedly received more forms from Northeast Carpenters Funds informing him that if he retires at 62 he cannot work as a Union Carpenter in another state, but that if he retires at 65 he could do so. (Id.).

Plaintiff commenced this action on September 18, 2015. (See ECF No. 1 ("Compl.")). On November 9, 2015, Plaintiff filed an Amended Complaint claiming numerous causes of action and related issues, including: "440 Other Civil Rights;" violation of the Racketeer Influenced and Corrupt Organization ("RICO") Statute; "Slander, Deformation of Character, Harassment and 360 Other Personal Injury;" denial of the right to a skill; age discrimination; whistleblowing; and loss of wages. (First Amended Complaint at 2, see section "Jurisdiction," ¶¶ 3-10). On January 19, 2016, Defendants moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9). On March 8, 2016, this Court dismissed Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 15). The Court granted Plaintiff leave to file a Second Amended Complaint. (Id.).

Thereafter, Plaintiff filed his Second Amended Complaint ("SAC") on April 19, 2016, which purportedly addressed the pleading deficiencies of the First Amended Complaint. (ECF No. 18). Plaintiff's SAC was nearly identical to the First Amended Complaint. The Court noted that Plaintiff added an additional cause of action for "Liable" [sic]. (SAC at 4; see "Damages, Claims States and Allegations" at ¶ 2). Additionally, Plaintiff increased his demand from $10,000,000 to $100,000,000. (SAC at 6; see "Demand/Relief" at ¶ 2). On February 8, 2017, this

Court dismissed Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6), finding that Plaintiff's SAC did not remedy the deficiencies identified in its March 8, 2016 Opinion. (ECF No. 62). The Court, once again, provided Plaintiff with leave to file a Third Amended Complaint and explicitly stated that "[f]ailure to comply with [the Court's] instructions shall result in dismissal *with* prejudice." (Id.)(emphasis in original).

On May 1, 2017, Plaintiff has since filed a TAC. (ECF No. 72). Plaintiff's TAC contains much of the same language as his SAC and excerpts from this Court's February 2017 Opinion. Plaintiff seems to have added additional causes of action under the Fourteenth Amendment of the United States Constitution, the Occupational Safety and Health Act ("OSHA"), and a vague reference to "missing benefit hours." (TAC at 4, *see* section "Cause of Action, Damages, and Claim Stated," ¶ 2(c); TAC at 8, *see* section "Statement of Undisputed Facts," ¶ 14). Plaintiff concedes that he does not have a whistleblowing, claim but maintains that he will have grounds for such a claim if his TAC is dismissed. (TAC at 13, *see* section "Conclusion," unnumbered ¶ 1). The demand for relief remains the same. (TAC at 13, *see* section "Demand/Relief").

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps: first, the Court must take note of the elements a plaintiff must plead to state a claim; second, the Court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Court also notes that pleadings submitted by *pro se* litigants are subject to liberal construction. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court is required to accept a *pro se* plaintiff's well-pleaded factual allegations as true while drawing reasonable inferences in his or her favor. *Capogrosso v. Sup.Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). However, a *pro se* complaint must still contain sufficient factual matter to state a claim for relief that is plausible on its face. *See Franklin v. GMAC Mortgage*, 523 F. App'x 172, 173 (3d Cir. 2013). Drawing upon his status as a *pro se* litigant, Plaintiff requests that the Court "add in rules and site [*sic*] cases missing from his Brief." (ECF No. 85). While the Court construes motions by *pro se* litigants liberally, the Court is limited in its ability to provide the assistance Plaintiff seeks. As such, the Court is not a liberty to write Plaintiff's brief for him or to add on to the allegations posed in his brief.

### III. ANALYSIS

Plaintiff purportedly asserts a variety of claims throughout the TAC. Interpreting the TAC in the light most favorable to Plaintiff, the Court understands that Plaintiff's causes of action arise out of his pension plan and the removal of his steward skill. In Plaintiff's Opposition to Defendants' Motions to Dismiss, Plaintiff also asks the Court to clarify if the Defendants have been properly served, yet Plaintiff himself acknowledges Defendants' Motions to Dismiss which obviates any guidance from this Court, as it is apparent Defendants are in receipt of, and have moved to dismiss, Plaintiff's TAC. (*See* ECF No. 85 at 2). For the following reasons, the Court dismisses the TAC with prejudice.

#### A. ERISA Related Claims

In the TAC, Plaintiff alleges that he is challenging Pension Fund rules and was wrongfully denied Pension hours.[2] (TAC at 5, *see* section "Cause of Action, Damages, and Claim Stated," ¶ I; "Damages, Claims Stated, and Allegations" at ¶¶1-2; TAC at 6, *see* section "Background History," unnumbered ¶ 4). Unlike the original complaint as well as the SAC, the TAC makes an explicit reference to the Employee Retirement Income Security Act ("ERISA"). (TAC at 9, *see* section "Allegations," ¶¶ 5, 6, 9). ERISA is the governing statute regarding pension-related issues and governs the issue between the parties herein. *See* 29 U.S.C. §§ 1002(3), 1003(a) (2014).

An employee seeking pension benefits may bring an action under ERISA to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). However, prior to filing a claim in federal court, "[u]nder ERISA a party *must exhaust all of the administrative remedies* available under the plan." *Henshaw v. Roofers Local No. 4 Pension Fund*,

---

[2] Plaintiff seeks "an extra 3 [Pension Fund] Credits," but Plaintiff has not established how the Court could fashion such a remedy. (TAC at 11, *see* section "Legal Argument," unnumbered ¶¶ 1-2.)

6

2006 WL 2715138, at *2 (D.N.J. Sept. 19, 2006) (emphasis added). *See also Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . , a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."); *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir. 1984) (noting that "the federal courts have generally not entertained [ERISA actions] where the party bringing the action has failed to exhaust administrative remedies"); *Zipf v. Amer. Tel. and Tel. Co.*, 799 F.2d 889, 892 (3d Cir. 1986) (explaining that claims based on the denial of benefits cannot initially be brought in a federal court).

An exception to administrative remedy exhaustion arises when "it appears that application through the administrative process would be futile." *Henshaw*, 2006 WL 2715138, at *2. In determining futility, a court may consider:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the benefit plan administrator to comply with his own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal would be futile.

*Id.* (citing *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002)).

In this case, Plaintiff has failed to allege that he exhausted any or all administrative procedures under the Pension Fund prior to commencing this action in federal court. Plaintiff states that he "has filed a claim against all defendants and nothing has been done about his claim. Defendants have clearly demonstrated that they will not do anything to even try to settle Plaintiff's claims and have showed [sic] this [C]ourt that applications through the administrative process would be futile." (TAC at 2, *see* section "Jurisdiction and Legel [sic] Arguement [sic]," ¶ 5). Plaintiff does not claim to have utilized the administrative process and seems to aver that same would be futile, thereby excusing him from attempting to resolve the matter through the

administrative process and proceed with this action.

However, aside from the above quote regarding futility, the TAC contains no additional allegations regarding futility. Plaintiff does not assert that he has attempted to even start the process nor has he pled that Defendants have a fixed policy denying benefits. Similarly, there are no allegations that the plan administrator has failed to comply with the plan's internal policies. Hence, Plaintiff's bare conclusion that pursuing and exhausting his administrative remedies would be futile is insufficient to qualify for the exception set forth above. Thus, the Court finds that all claims relating to Plaintiff's pension must be dismissed for failure to exhaust the appropriate administrative remedies under ERISA.

### B. Age Discrimination Claim

Plaintiff's TAC asserts that "Defendants Northeast Carpenters Pension Funds, [and] George Laufenberg, [have] a pension plan that discriminates against age." (TAC at 4; *see* "Cause of Action, Damages, and Claims Stated" ¶ 2(C)). He also claims that Union Defendants discriminated against him "by trying to get rid of Plaintiff because he is over 63 years old with trumped up charges or blame him for something that someone else [has] done." (TAC at 9; *see* section "Allegations," ¶ 4). Claims related to age discrimination in employment are governed by the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621, 623 (2015). Specifically, the ADEA provides, *inter alia*, that it "shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." § 623. Prior to commencing a civil action, a plaintiff must first "exhaust his or her administrative remedies." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 111 (3d Cir. 2014). The ADEA mandates that "[n]o civil action may be commenced by an individual under this section

8

until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." § 626(d)(1). Therefore, "[a] plaintiff's obligation to timely file with the EEOC is a condition precedent to filing suit under the ADEA." *Hildebrand*, 757 F.3d at 111.

In the instant action, Plaintiff has failed to allege that he exhausted any or all administrative remedies prior to filing his age discrimination claim in this Court. As was the case with Plaintiff's prior complaints, the TAC fails to provide any information concerning efforts made by Plaintiff to file charges with the Equal Employment Opportunity Commission. Plaintiff has not fulfilled the condition precedent necessary to bring a civil action under the ADEA, and, accordingly, the age discrimination claim shall be dismissed.

### C. Suspension of Plaintiff's Steward Skill Claim

#### 1. Violation of Union Constitution

Plaintiff claims that Union Defendants violated the Union Constitution by allegedly removing his Steward Skill. (TAC at 5; *see* "Cause of Action, Damages, and Claims Stated," ¶ H). As this Court previously noted in its prior Opinion, Section 301 of the Labor Management Relations Act of 1947 ("LMRA") authorizes union members to bring suit in their individual capacities against labor unions for violations of collective-bargaining agreements, union constitutions, and other forms of contracts. 29 U.S.C. § 185(a); *see also Wooddell v. Int'l Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991) (explaining that "union constitutions are an important form of contract between labor organizations . . . [and that union members] may bring suit on these contracts under § 301."). Furthermore, "the policy of forestalling judicial interference with internal union affairs . . . has been strictly limited to disputes arising over internal union matters such as those involving the interpretation and application of a union constitution." *Clayton*

9

*v. Int'l Union, United Auto Workers*, 451 U.S. 679, 687-88 (1981). Thus, an aggrieved plaintiff is encouraged to exhaust internal union remedies prior to filing suit for challenging contractual violations. *See Orlando v. Interstate Container Corp.*, 100 F.3d 296, 299 (3d Cir. 1996) (explaining that "before resorting to a section 301 suit, an employee 'must attempt to exhaust any exclusive grievance and arbitration procedures established by . . . [a contractual] agreement'") (internal citation omitted). The failure to exhaust internal remedies may be excused by a court acting with discretion to evaluate:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Id.* at 689.

In ofar as Plaintiff attempts to argue that the suspension of his Steward Skill contravened the Union's internal constitution and/or by-laws in violation of the LMRA, Plaintiff asserts "No where is it stated in the Constitution of the United Brotherhood of Carpenters and Joiners of America or Bylaws of District Council for New [York] City and Vicinity of the United Brotherhood for Carpenters and Joiners of America[] that a member may be suspended or found guilty for not attending a meeting." (TAC at 6, *see* "Background History," unnumbered ¶ 2). Nonetheless, Plaintiff does not allege that such laws contain a provision prohibiting suspension on the aforementioned grounds. Further, Plaintiff has failed to demonstrate that he attempted to exhaust internal remedies regarding a violation of the Union constitution, as encouraged by the Third Circuit. Though Plaintiff put in a "complaint" with the Inspector General Office and submitted a letter to Defendant Walker requesting an "appeal," there is no information concerning internal remedies, in general, and Plaintiff does not demonstrate his attempts to exhaust such

internal remedies. Plaintiff also does not identify any relevant factors that could aid the Court in excusing his failure to exhaust internal remedies, aside from the general claims that Defendants refuse to "settle this case." (Id. at ¶ 3). However, the refusal to settle a matter does not excuse Plaintiff from pursuing the necessary administrative remedies. Thus, this cause of action must be dismissed.

2. Improper Disciplinary Action

Plaintiff also seems to assert that the removal of his Steward Skill was an improper disciplinary action for which he is due compensation. (TAC at 6, see "Background History," unnumbered ¶ 2). The Labor-Management Reporting Disclosure Act of 1959 ("LMRDA") provides that no labor organization member "may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). Section 411(a)(5) of the LMRDA "deals with the union-member relationship and in no way supports jurisdiction of a suit involving the employer (union)-employee (business agent) relationship." *Sheridan v. United Bd. of Carpenters and Joiners of Am., Local No. 626*, 306 F.2d 152, 157 (3d Cir. 1962) (citation omitted). In *Mirra v. Highway & Local Motor Freight Drivers, Local Union 70,* 1964 U.S. Dist. LEXIS 7525, at *3-4 (D.N.J. Feb. 10, 1964), the Court explicitly held that the removal of the plaintiff as a shop steward did not constitute a disciplinary action because "removal from union office, such as business agent, is not disciplinary action within the meaning of Section 411(a)(5)." Therefore, suit under Section 411(a)(5) of the LMRDA for improper disciplinary action is only proper when a plaintiff seeks to litigate issues concerning the union-member relationship.

Even when the TAC is interpreted in the light most favorable to Plaintiff, the removal of

11

Plaintiff's Steward Skill does not qualify as a disciplinary action under the LMRDA. Plaintiff, an employee/business agent, seeks to bring suit against the Union as his employer for removing his Steward Skill. However, such action is simply improper under Section 411(a)(5) of the LMRDA because Plaintiff is not bringing suit in response to actions relating to a union-member relationship. *See Mirra,* 1964 U.S. Dist. LEXIS 7525, at *3-4.

As a whole, Plaintiff's claim relating to the suspension of his Steward Skill fails both under the Labor Management Relations Act and the Labor-Management Reporting and Disclosure Act. As such, this claim shall be dismissed.

### D. RICO Claim

The TAC also contains a claim for RICO violations.[3] (TAC at 3; *see* "Jurisdiction and Legel [*sic*] Argument" ¶ 9; *see also* TAC at 4 "Cause of Action, Damages, and Claims Stated," at ¶ B). According to Plaintiff, "[t]his case is about [d]ebt by [d]eception and [e]xhaustion of [f]unds and falls under the RICO statute." (TAC at 3; *see* "Jurisdiction and Legel [*sic*] Argument" ¶ 9). Accordingly, Plaintiff alleges that he has been denied the correct amount of pension money. (TAC at 4; *see* "Cause of Action, Damages, and Claims Stated," at ¶ B). Aside from these statements, Plaintiff makes no substantive RICO related allegations.

Section 1962(c) of the Federal RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt."[4]

---

[3] Plaintiff does not specifically address whether he is bringing suit under the federal or state RICO statutes. As such, the Court will address both the federal and state RICO statutes regarding Plaintiff's claim concurrently. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 245 (3d Cir. 2012) (holding that the "Complaint's federal and New Jersey RICO Claims parallel each other, and because the two RICO statutes are intended to be coextensive, we follow the District Court's approach and analyze the two claims concurrently").

[4] The New Jersey RICO statute is nearly identical to the federal statute as it provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to

18 U.S.C. § 1962(c). An "unlawful debt" is defined as a debt "(A) incurred or contracted in gambling activity which was in violation of the law . . . and (B) which was incurred in connection with the business of gambling in violation of the law of the United States . . . or the business of lending money or a thing of value at a rate usurious under State or Federal law." § 1961(6). "Racketeering activity" is defined to include a large variety of predicate acts. § 1961(1).

Specifically, a RICO violation requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "A pattern of racketeering activity requires at least two predicate acts of racketeering." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); *see also* 18 U.S.C. § 1961(5). Further, to "prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc., v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The Supreme Court has explained that "'continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Also, a plaintiff only has standing to bring a RICO suit "if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation of RICO." *Maio v. Aetna, Inc.*, 221 F. 3d 472, 483 (3d Cir. 2000).

Here, Plaintiff's RICO claim once again falls short of the statutory requirements. First, the Court notes that Plaintiff has not made any substantial changes to the allegations relating to RICO in his TAC. Additionally, since Plaintiff has not alleged gambling activities, it is presumed that he intends his allegations to be construed as predicate acts within Section 1961(1). However, the allegations of "Debt by Deception" and "Exhaustion of Funds" still do not constitute predicate acts

---

conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-2.

nor are they similar to predicate acts described in the statute. *See* 18 U.S.C. § 1961(1). The allegations in the TAC remain conclusory and they fail to provide specific acts in violation of RICO. Although Plaintiff argues that the "Debt by Deception" practice demonstrates an ongoing occurrence, he once again fails to provide any specific information demonstrating a pattern of ongoing racketeering activity as required by Section § 1961(5). Again, Plaintiff's allegation of an ongoing occurrence is conclusory and unsupported by detailed information. For this reason, Plaintiff's federal and state RICO claims shall be dismissed.

### E. Defamation and Slander Claims

The TAC also contains a claim for "Slander, [and] Deformation [*sic*] of Character." (TAC at 3; *see* "Jurisdiction and Legel [*sic*] Argument," at ¶ 10). To succeed in a defamation action, a plaintiff "must prove three essential facts: (1) that defendants made a false and defamatory statement concerning [the plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that defendants acted negligently or with actual malice." *G.D. v. Kenny*, 205 N.J. 275, 292-93 (N.J. Sup. Ct. 2011). Generally, a defamatory statement is "one that subjects an individual to contempt or ridicule [or] one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *Id.* (internal citations omitted). Statements that are substantially true, however, are not defamatory. *Birch v. Wal-Mart Stores, Inc.*, 2015 WL 8490938, at *3 (D.N.J. Dec. 9, 2015).

A plaintiff must not assert a "vague conclusory allegation" of defamation. *Birch*, 2015 WL 8490938, at *4. *See also Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (N.J. Super Ct. App. Div. 1986). Instead, a plaintiff "must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Birch*, 2015 WL 8490938, at *4. Slander specifically involves the verbal communication of a defamatory statement to a third person.

14

*Gnapinsky v. Goldyn*, 23 N.J. 243, 252 (N.J. 1957). Without the "essential element" of communication to a third person, slander is not shown. *See id.; Fatouros v. Lambrakis*, 2015 WL 5574413, at *3 n.6 (3d Cir. Sept. 23, 2015).

Here, Plaintiff has failed to correct the deficiencies identified in relation to these claims as he has not pled "facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Birch*, 2015 WL 8490938, at *4. First, Plaintiff has failed to identify any defamatory words or remarks made by the Defendants. Plaintiff simply states that the suspension of his Steward Skill on his record results in "liable [sic]," "slander" and "deformation [sic] of character." (TAC at 12, *see* "Legal Argument," unnumbered ¶ 17). However, Plaintiff's suspension on his record represents a true statement of fact, and true statements are not defamatory. *See Birch,* 2015 WL 8490938, at *3.

Moreover, the TAC contains no allegations to indicate that the alleged defamatory words or remarks were communicated to another individual orally, as required for slander, or in writing. Finally, as Plaintiff has not demonstrated communication to a third party, Plaintiff has failed to plead that Defendants acted negligently or with actual malice. Therefore, Plaintiff has failed to adequately plead his defamation and slander claims with sufficient factual allegations and his claims shall be dismissed.

### F. Whistleblowing Claim

Plaintiff also purports to assert a whistleblowing claim. (TAC at 3; *see* "Jurisdiction and Legel [sic] Argument" at ¶ 13). Plaintiff then concedes that he does not presently have a whistleblowing case, but asserts that "If this court dismiss[es] Plaintiff['s] Amended 3rd Complaint, then Defendants will just get rid of Plaintiff all together and Plaintiff will have [such a case.]" (TAC at 13, *see* "Conclusion," unnumbered ¶ 1). Aside from these statements, Plaintiff

15

makes no substantive whistleblowing related allegations.

In New Jersey, whistleblower activity includes, *inter alia*, disclosing to a "supervisor or to a public body an activity, policy or practice of the employer ...that the employee reasonably believes" violates a law or is fraudulent or criminal. *See* N.J.S.A. 34:19-3(a)(1)-(2). Furthermore, an employer must take "retaliatory action against an employee" in order for there to be an actionable whistleblowing claim. *Id.* 34:19-3(a).

As with Plaintiff's previous complaints, Plaintiff's purported whistleblower claim is implausible as alleged. Plaintiff cannot bring a claim when there is no injury in fact and no claim has yet accrued. He cannot bring a claim on the basis that he suspects Defendants will retaliate against him in the future. Further, just as with the previous complaints, the TAC contains no allegations regarding to whom, or on what activity, he "blew the whistle." Plaintiff's whistleblowing claim remains inadequate and shall be dismissed.

### G. Intentional Infliction of Emotional Distress

The TAC also seems to contain a claim for Intentional Infliction of Emotional Distress. (TAC at 3; *see* "Cause of Action, Damages, and Claims Stated," at ¶¶ (A), (B)).[5] "Under New Jersey law, to prevail on a common law cause of action for intentional infliction of emotional distress, '[t]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe.'" *Fidanzato v. Somerset*, 2012 WL 4508008, at *11 (D.N.J. Sept. 28, 2012) (quoting *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (N.J. Sup. Ct. 1988)). A defendant "must intend both to do the act and to produce emotional distress." *Buckley*, 111 N.J. at 366. Additionally, "the emotional distress suffered by the plaintiff must be

---

[5] The Court acknowledges that Plaintiff did not explicitly claim "intentional infliction of emotional distress" by Defendants. However, Plaintiff's claim of "emotional stress as a direct result of the damages created by Defendants, Lack of Income, and the refusal to settle" will be construed as an attempt to claim intentional infliction of emotional distress. (TAC at 3-4, *see* "Cause of Action, Damages, and Claim Stated" at ¶¶ 2(A), 2(B).)

16

so severe that no reasonable man could be expected to endure it." *Id.* (internal citation and quotation marks omitted).

Plaintiff's claim of intentional infliction of emotional distress cannot succeed as he once again has failed to plead "intentional and outrageous" conduct by the Defendants and the severity of his distress. As noted by this Court when it dismissed Plaintiff's First Amended Complaint, Plaintiff's claim of "Pain and Suffering" due to Defendants' alleged refusal to settle the case, in particular, cannot provide the basis for an intentional infliction of emotional distress claim. *See Fidanzato,* 2012 WL 4508008, at *11 ("The Court has not found any case law that supports the preposterous notion that filing of court documents [in furtherance of a lawsuit] is both extreme and outrageous in the context of intentional infliction of emotional distress."). Accordingly, Plaintiff has not adequately pled a claim for intentional infliction of emotional distress and the claim shall be dismissed.

### H. Harassment Claim

Plaintiff also purports to assert a claim for "harassment." (TAC at 3; *see* "Jurisdiction and Legel [*sic*] Argument," at ¶ 10). In New Jersey, "harassment" is not recognized as "free-standing civil cause of action for damages." *Hodge v. McGrath,* 2014 WL 6909499, at *1 (N.J. Super. Ct. App. Div. Dec. 10, 2014). *See also Greenblatt v. Klein,* 2015 WL 1034633, at *5 (D.N.J. Mar. 10, 2015), *aff'd,* 634 F. App'x 66 (3d Cir. 2015) (holding that a plaintiff failed to establish "any facts sufficient to sustain a cause of action for harassment" when he failed to cite "any federal law or statute under which his harassment claim may arise").

Here, Plaintiff's generalized claim of "harassment" must fail, as he has not remedied his prior pleading deficiencies concerning this claim. Plaintiff still fails to identify any specific harassment statutes that have been violated by Defendants and fails to identify why the suspension

of his Steward Skill amounts to harassment. As such, Plaintiff's harassment claim shall be dismissed.[6]

### I. Fourteenth Amendment and OSHA Claim

Inasmuch as Plaintiff raises a Fourteenth Amendment claim and/or claim under OSHA, Plaintiff's complaint cannot survive under either. Plaintiff alleges that Union Defendants violated the Fourteenth Amendment by suspending him without an appeal. (TAC at 8-9, *see* "Allegations," ¶¶ 1, 2). He then adds, "[a]lso act to protect worker rights" (*Id.*) which may be a reference to the Occupational Safety and Health Act of 1970 ("OSHA"), a portion of which Plaintiff appended to the TAC. (TAC at 31, *see* Exhibit R). In terms of the Fourteenth Amendment claim, Defendants herein are not state actors and therefore cannot be sued under Fourteenth Amendment. *See Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014). Nor does Plaintiff allege that Defendants have deprived him of any right. *Id.* Thus, his Fourteenth Amendment claim shall be dismissed.

Moreover, OSHA refers to "safe and healthful working conditions," which is not the basis of Plaintiff's claim. 29 U.S.C. § 651(b). Even if he had alleged a violation of OSHA, "OSHA violations do not themselves constitute a private cause of action for breach." *See Am. Fed. of Govt. Emps., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143 (D.C. Cir. 2003) (quoting *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994)). Therefore, should this Court construe the complaint to raise such a cause of action, it cannot survive.

---

[6] Plaintiff also asserts a claim of "360 Other Personal Injury." (TAC at 3, *see* section "Cause of Action, Damages, and Claim Stated," ¶ 2(A)). However, Plaintiff's claim appears to correspond to a claim of "Personal Injury" on the Civil Cover Sheet. Plaintiff fails to allege facts demonstrating that he suffered any injury to his person as a result of Defendants' actions. Thus, this claim shall also be dismissed. The Court further acknowledges that various individual Defendants have separately argued that they are inappropriately named as Defendants because they cannot be subject to personal liability. Since the Court finds the TAC to be deficient for other reasons, the Court declines to address the arguments.

18

### J. Missing Benefit Hours Claim

Finally, Plaintiff asserts that he is "missing Benefit Hours from last year." (TAC at 8 ¶ 1). He does not explain the legal basis for relief and merely states that he sent a letter to the Inspector General regarding his missing benefit hours. (Id.). Such allegations fail to apprise Defendants, let alone this Court, as to what claim Plaintiff is raising with regards to same, inconsistent with this Court's clear directive contained in the February 2017 opinion. As such, the Court must dismiss this claim.

### IV. CONCLUSION

For the reasons above, the Court grants the Motions to Dismiss and dismisses Plaintiff's TAC. While generally a Court will show deference to a *pro se* litigant, Plaintiff has not corrected the deficiencies in his earlier Complaint, despite the fact that the Court provided Plaintiff with numerous opportunities to do so. Accordingly, the Court believes that "further amendment would be futile" and dismisses the TAC with prejudice. *See Harris v. Governor of Pennsylvania*, 578 F. App'x 105, 107 (3d Cir. 2014) (finding that dismissal of a *pro se* litigant's complaint with prejudice is appropriate when the District Court allows the litigant numerous opportunities to file a viable complaint to no avail). An appropriate Order and Judgment accompanies this Opinion.

DATED: July 20, 2017

JOSE L. LINARES
Chief Judge, United States District Court