**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK STAMPONE,<br><br>       Plaintiff,<br><br>   v.<br><br>MATTHEW WALKER (DIRECTOR OF OPERATIONS), AND NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS, NORTHEAST CARPENTERS FUNDS, AND GEORGE LAUFENBERG (MANAGER), NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS BENEFIT FUNDS,<br><br>       Defendants. | Civil Action No.: 15-cv-6956<br><br><br>**OPINION** |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court on *pro se* Plaintiff Frederick Stampone's ("Plaintiff" or "Stampone") and Defendant New York City District Council of Carpenters Pension Fund's ("Defendant" or the "Pension Fund") cross-motions for summary judgment.  ECF Nos. 178–80.  Defendant opposed Plaintiff's motion (ECF No. 182).[1]  The Court has considered the submissions made in support of and in opposition to the motions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below,

---

[1] Plaintiff filed his operative summary judgment motion on July 20, 2022.  ECF No. 178.  In that one-page filing, titled "Motion for Summary Judgment and Opposition to Defendants Motion," Plaintiff did not put forth any factual contentions or legal argument.  Rather, Plaintiff requested that the Court rely entirely on Plaintiff's "last motion for summary judgment," his Third Amended Complaint, the order and opinion of the Third Circuit Court of Appeals in this matter, and "all motions and all papers previously filed in this Court in support of this motion for summary judgment."  ECF No. 178 at 1.  It appears that Plaintiff's "last motion for summary judgment" refers to Plaintiff's previously filed "Motion to Deny, Dismiss Defendant's Motion and Enter Judgment in Favor of Plaintiff and Against Defendants."  *See* ECF No. 144.  Nevertheless, given Plaintiff's *pro se* status and the interest of judicial economy, the Court has considered each of Plaintiff's submissions and the guidance provided by the Third Circuit in deciding the instant motions.

Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

## II.      BACKGROUND

### A.      Factual Background

The instant action arises out of Plaintiff's claims that Defendant miscalculated his pension benefits and thus owes him a higher monthly pension than he purportedly receives at present.  Plaintiff has been a member of the United Brotherhood of Carpenters since 1978, and the New York City District Council of Carpenters for more than 10 years.  ECF No. 72 (Third Amended Complaint, hereinafter "TAC") at 5, section "Statement of Undisputed Facts", ¶ 2. Defendant operates as a pension fund, which provides pension benefits to eligible participants as governed by the Labor Management Relations Act of 1947 (the "Taft-Hartley Act") and the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* Defendant's Statement of Material Facts Not in Dispute ("DSMF") ¶ 2.  Plaintiff is a participant in the pension benefit plan of the New York City District Council of Carpenters, a plan managed by Defendant.  *Id.* Plaintiff claims that Defendant violated ERISA by failing to appropriately credit him for work completed and allegedly reducing the value of his earned credits in order to devalue his total pension. TAC at 9.

Defendant's guidelines regarding pension eligibility, vesting credits, and benefit formulas, are set forth in the Plan Document, "The New York City District Council of Carpenters Pension Plan (Amended and Restated Effective January 1, 2014)" (*see* ECF No. 180– 4, Cordero Decl. Ex. B, hereinafter, the "Plan").  DSMF ¶ 6.  Participating individuals in the Plan, like Plaintiff, receive vesting credits based upon the number of hours they work in a calendar year, which in turn are used to determine whether a participant is eligible for benefits.

*Id.* at ¶¶ 9–12.  An individual must work at least 300 hours in qualifying employment during a calendar year to earn any vesting credit in that year, and 870 hours to receive the full credit; the maximum amount of vesting credit that a participant can earn in a calendar year is one credit, even if the participant worked more than the 870-hour threshold.  *Id.* at ¶¶ 20, 24; Plan § 3.2.[2] Here, Defendant determined that Plaintiff had earned a total of 6.25 vesting credits for his qualifying work between 2004 and 2020.  *Id.* at ¶¶ 13, 23–29.[3]  Accordingly, under Defendant's Plan, Plaintiff had sufficient vesting credits to qualify for benefits upon retirement at age 65.  *Id.* at ¶ 19.  In his letter motion dated May 10, 2019, incorporated by reference into the instant motion for summary judgment, Plaintiff asserts he had actually earned "10 Credits toward Retiree Welfare Eligibility and 23 vesting credits [total]."  ECF No. 144 at 4.

Over the more than seven years in which this litigation has existed, the parties engaged in several discussions in an attempt to solidify the appropriate amount of pension benefits that Defendant must pay to Plaintiff.  *See, e.g.*, Minute Entries for proceedings held 3/27/2018; 6/25/2018; 11/6/2018; 1/5/2021; 3/2/21; 8/19/2021.  On March 2, 2021, this Court ordered that Defendant mail a pension application to Plaintiff, which Plaintiff submitted on March 18, 2021, for informational purposes only.  DSMF ¶¶ 30–31; *see also* ECF No. 158 at 32 (Plaintiff had not yet decided to retire and was not bound by having initiated the application process).  After providing additional information at Defendant's request, Plaintiff was presented with his pension options with an effective date of May 1, 2022.  DSMF ¶ 32.  In accordance with the Plan's rules,

---

[2] A Plan participant earns vesting credit according to the following schedule:  0 credits earned for fewer than 300 hours of service; .25 credits earned for 300–599 hours; .5 credits earned for 600–869 hours; and 1 credit earned for 870 hours or more.  DSMF ¶ 21; Plan § 3.2(b)(2).

[3] In addition to Plaintiff's 6.25 vesting credits from Defendant, Plaintiff also earned 12 reciprocal vesting credits between 1980 and 1995 under the Northeast Carpenters Fund, an entirely separate pension plan from Defendant's plan at issue.  DSMF ¶ 16.  Defendant has no authority with respect to the Northeast Carpenters Pension Fund.  *Id.* at ¶ 17.

he was provided the option of either: (1) a monthly payment of $1,015.24, plus a one-time lump sum benefit of $28,704.19, which includes missed monthly payments of $1,015.24 along with 4% interest compounded annually; or (2) an actuarially increased monthly benefit of $1,289.35. *Id.* at ¶ 35.  Plaintiff elected the second option and informed this Court that he decided to retire. *Id.* at ¶ 36; *see also* ECF No. 161 (letter from Plaintiff indicating "I have decided[sic] to retire, I signed and enclosed all forms.").

Consequently, on May 4, 2022, Defendant advised Plaintiff in writing of the approval of his pension application in the amount of $1,289.35 per month and advised Plaintiff that if he disagreed with the amount awarded, he could file a written appeal within 60 days of May 4, 2022.  DSMF ¶ 39.  The Plan provides for an appeals process if an individual wishes to dispute the Pension Fund's decision on his or her benefit application. *Id.* at ¶ 37.    Defendant began making monthly payments to Plaintiff in the amount of $1,289.35 on May 13, 2022 and is obligated to continue making these payments for the remainder of Plaintiff's life. *Id.* at ¶¶ 36, 38.  Plaintiff has not appealed this benefit award, and the deadline to file an administrative appeal expired on July 3, 2022. *Id.* at ¶¶ 40–41.

Despite the commencement of payments from Defendant to Plaintiff, on June 28, 2022, Plaintiff informed this Court that he still contests Defendant's benefit calculation.  ECF No. 176. Thereafter, this Court ordered the parties to file the instant summary judgment motions to resolve this long-standing dispute.  ECF No. 177.  In his motion, Plaintiff appears to assert that summary judgment is warranted in the amount of $100,000,000 because Defendant violated ERISA by "unlawfully and deliberately" failing to credit Plaintiff's pension account with credits he purportedly had earned, and "then changing the value of each credit to cover up the Debt By Deception and making the total Pension much less in value."  TAC at 4, 9.

In its competing motion, and in opposition to Plaintiff, Defendant avers that summary judgment should be granted in its favor because Plaintiff failed to exhaust his administrative remedies or establish that exhaustion would be futile, (See ECF No. 180, pp. 3-10, 15-26, ECF No. 180-1, ¶¶ 6-36, 37-41) and because Plaintiff is receiving his proper pension benefits as calculated in accordance with the terms of the Plan and under ERISA.

## B.      Procedural History

Plaintiff commenced this action against the New York City District Council of Carpenters and its Director of Operations, Matthew Walker, on September 18, 2015, with Judge Jose L. Linares presiding.  ECF No. 1.  On November 9, 2015, Plaintiff filed his first amended complaint against the same parties asserting several additional causes of action.  ECF No. 4.  The Pension Fund was not named as a Defendant in Plaintiff's first amended complaint, but Plaintiff had asserted claims involving miscalculation of his vesting credits.  *Id.*  On March 8, 2016, Judge Linares dismissed Plaintiff's amended complaint without prejudice.  ECF No. 15.

On April 19, 2016, Plaintiff filed his Second Amended Complaint ("SAC") which added the Pension Fund, the Northeast Carpenters Funds, and George Laufenberg as defendants.  ECF No. 18.  All defendants, including the Pension Fund, moved to dismiss Plaintiff's SAC, and on February 8, 2017, Judge Linares granted dismissal.  ECF Nos. 62 and 63.

Plaintiff filed the TAC on May 1, 2017.  ECF No. 72.  All defendants moved to dismiss Plaintiff's TAC.  ECF Nos. 73–75.  On July 20, 2017, Judge Linares dismissed Plaintiff's TAC with prejudice, indicating that "all claims relating to Plaintiff's pension must be dismissed for failure to exhaust the appropriate administrative remedies under ERISA."  ECF No. 87 at 7–8.

Plaintiff appealed Judge Linares's decision to the Third Circuit Court of Appeals.  ECF No. 90.  On January 8, 2018, the Third Circuit vacated Judge Linares's dismissal with respect to

Plaintiff's ERISA claim against Defendant and affirmed the decision in all other material respects. *Stampone v. Walker*, 722 F. App'x 246, 250 (3d Cir. 2018). Specifically, the Third Circuit determined that dismissal for failure to exhaust the appropriate administrative remedies was premature at the motion to dismiss stage and therefore more appropriate for disposition at summary judgment. *Id.* at 249–50. The Third Circuit emphasized the narrow scope of its remand, stating that:

> [T]his case presents a simple dispute over the calculation of Stampone's pension benefits. We express no opinion on whether Stampone has exhausted his ERISA claim regarding his pension, on the merits of that claim, or on whether Stampone would be entitled to any damages if he were to prevail. Stampone, however, should bear in mind the limited nature of this case on remand.

*Id.* at 251. On remand, the Third Circuit instructed the Court that it "may wish to conduct proceedings limited to the questions of whether Stampone has exhausted this claim and, if not, whether exhaustion would be futile. *Id.* at 250.

As the sole remaining Defendant, in light of the Third Circuit's remand, the Pension Fund noticed Plaintiff's deposition, but Plaintiff failed to attend. ECF No. 137–2, ¶ 38, at 11. Thereafter, Defendant filed its first motion for summary judgment (ECF Nos. 137, 138, 148) and Plaintiff filed its Notice of Motion to Deny, Dismiss Defendant's Motion, and Enter Judgment in Favor of Plaintiff and Against Defendants. ECF No. 144. While these motions were pending, on May 29, 2019, this case was reassigned to the undersigned for all further proceedings. ECF No. 147. On March 2, 2021, this Court held a conference to discuss whether Plaintiff had exhausted his administrative remedies or if doing so would be futile. ECF Nos. 154–55. During this conference, Plaintiff represented that he did not recall receiving a pension application and thus had not begun the administrative process of receiving pension benefits. *Id.* The Court ordered Defendant to mail a copy of the pension application to Plaintiff and that Plaintiff's completion of

the application would be for information purposes only as to his benefit calculation.  ECF No. 154.  On May 26, 2021, the Court noted Plaintiff's representation that he intended to retire, and thus administratively terminated Defendant's first motion for summary judgment and referred this matter for a settlement conference before Magistrate Judge Jessica S. Allen.  ECF No. 162. Judge Allen held the conference on August 19, 2021, but the parties did not reach a resolution.

On February 14, 2022, Plaintiff filed a motion for jury trial (ECF No. 164).  Defendant opposed that motion (ECF Nos. 168, 172).  By Order dated July 8, 2022, Judge Allen set a summary judgment briefing schedule and denied Plaintiff's motion for a jury trial without prejudice to his right to seek a jury trial pending decision on the summary judgment motions. ECF No. 177.  Plaintiff filed his operative summary judgment motion on July 20, 2022 (ECF No. 178).  Defendant filed its operative summary judgment motion on August 8, 2022 (ECF Nos. 179–180) and opposed Plaintiff's motion on August 31, 2022.  ECF No. 182

## III.    LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has satisfied this burden, "the non-moving

party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[] the 'mere scintilla' threshold . . . .").  An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.*

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.  Importantly, summary judgment is also appropriate "if the non-moving party provides merely conclusory or speculative evidence." *Beard v. Norfolk S. Ry. Corp.*, 2020 WL 2616670, at *2 (M.D. Pa. Mar. 12, 2020) ("There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.").  Indeed, "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007); *see also Beard*, 2020 WL 2616670, at *3 ("[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment.").

8

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468–69 (citations omitted).

IV.    **DISCUSSION**

A.  **Plaintiff's ERISA Claim**

The Court will first consider Plaintiff's motion for summary judgment. Plaintiff avers that Defendant's under-calculation of his pension benefits violated ERISA, the governing statute regarding pension-related issues. *See generally* ECF No. 144; 29 U.S.C. ¶¶ 1002(3), 1003(a) (2014). ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought [] by a participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, Plaintiff argues that he is entitled to recover benefits due to him under the Plan, but the scant evidence he offers in support of his claim does not meet the initial burden of showing an absence of a genuine issue of material fact. Plaintiff does not identify any specific facts within his proffered evidence to support his claims that he was improperly denied pension benefits or that his benefits were miscalculated by Defendant. The relevant evidence Plaintiff has submitted are: (a) communications from the Pension Fund regarding Plaintiff's pension credits; and (b) pages from the summary Plan description which relate to the calculation of his pension benefits. (See ECF No. 144-1, pp. 1, 39-41). Plaintiff does not explain how, nor is the Court persuaded, that these documents establish that Plaintiff is entitled to the relief he seeks on summary judgment.

Further, Plaintiff's motion must be denied for failure to comply with Local Civil Rule 56.1(a). Plaintiff's motion is procedurally deficient under Local Civil Rule 56.1(a), which requires that on "motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." Plaintiff has not provided a statement of material facts accompanying his motion. Local Civil Rule 56.1(a) plainly states that a "motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." This Court has underscored that failure to file an undisputed statement of material facts accompanying a motion for summary judgment "is not to be taken lightly." *City of Atl. City v. Zemurray St. Cap., LLC*, No. 14-5169, 2017 WL 1540386, at *2 (D.N.J. Apr. 25, 2017). Courts routinely dismiss summary judgment motions under L. Civ. R. 56.1(a) for failure to provide a statement of material facts not in dispute. *See, e.g., Creer v. Camden Cnty.*, No. 18-1230, 2019 WL 4267935, at *3 (D.N.J. Sept. 10, 2019) (denying motion for summary judgment for failure to submit a statement of material facts in support of the motion); *Serfess v. Equifax Credit Info. Servs., LLC*, No. 13–0406, 2015 WL 5123735, at *2 (D.N.J. Sept. 1, 2015) (same); *Agbottah v. Orange Lake Country Club*, No. 12-1019, 2012 WL 12894827, at *1 (D.N.J. Mar. 27, 2012) (same). While the Court acknowledges that Plaintiff appears to include a "statement of undisputed facts" in his TAC, the Court emphasizes the importance of furnishing this statement with the moving papers. By including it in the TAC, filed more than five years prior to the instant summary judgment motion, Defendant "did not have the opportunity to respond by way of a Responsive Statement of Material Facts" in compliance with L. Civ. R. 56.1(a).

Accordingly, because Plaintiff has failed to offer evidence in support of his ERISA claim sufficient to remove any genuine issue of material fact, and because Plaintiff's motion is procedurally deficient under L. Civ. R. 56.1(a), Plaintiff's motion for summary judgment is denied.[4]

**B. Plaintiff Has Not Exhausted His Plan's Administrative Remedies Under ERISA and Does Not Qualify for the Futility Exception**

Turning to Defendant's summary judgment motion, the Pension Fund asserts that there exists no genuine issue of material fact regarding Plaintiff's failure to exhaust his administrative remedies under the Plan as required by ERISA. It is well-established that an ERISA plan participant must exhaust the administrative remedies under the plan before he may initiate a lawsuit to recover benefits or otherwise enforce his rights under the terms of the plan pursuant to the cause of action created by ERISA § 502(a)(1)(B). *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, (3d Cir. 2002); *see, e.g.*, *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) (noting that the "exhaustion requirement is strictly enforced."). In other words, at the summary judgment stage, Plaintiff may not bring a civil ERISA action in this Court without first exhausting the applicable administrative procedures under the Plan. The United States Court of Appeals for the Third Circuit has described the exhaustion requirement as serving many sound policies, among others, reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of plans by preventing premature judicial

---

[4] Plaintiff's claim for $100 million in damages (ECF No. 72 at 13) also fails as a matter of law under ERISA. The statutory provision authorizing a beneficiary to sue to enforce a plan - § 502(a)(1)(B) – does not provide for the recovery of extracontractual damages like those requested by Plaintiff. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 148 (1985); *see also Cent. States v. Bollinger, Inc.,* 573 F. App'x. 197, 200 (3d Cir. 2014); *Benvenuto v. Conn. Gen'l Life Ins. Co.,* 678 F. Supp. 469, 472 (D.N.J. 1988) (granting defendant's motion to dismiss plaintiff's claim for extra-contractual and punitive damages).

intervention in the plan fiduciaries' decision-making process.  *Metropolitan Life Ins. Co. v. Price*,

501 F.3d 271, 279 (3d Cir. 2007) (citing *Harrow*, 279 F.3d at 249).

       Here, there is no disagreement that the Plan provides an appeals process under which an

individual may dispute the Pension Fund's decision on his or her pension application and the

amount of benefits awarded.  *See* ECF No. 180-4 (Plan at § 8.7).  Specifically, the Plan outlines

the steps required to contest an adverse benefit determination:

> If an adverse benefit determination is made by the Claims
> Administrator, the claimant (or authorized representative) may
> request an appeal of such determination by the Trustees (or
> designated committee).  All appeals must be sent in writing to the
> Claims Administrator.   Appeals of an adverse benefit
> determination on a claim other than for a Disability Pension must
> be sent within sixty (60) days after receipt of a notification of an
> appeal. . . .  In connection with the appeal, the claimant (or
> authorized representative) may submit written comments,
> documents, records and other information relating to the claim for
> benefits.  In addition, the claimant will be provided, upon written
> request and free of charge, with reasonable access to, and copies
> of, all documents, records and other information relevant to the
> claimant's claim for benefits.

*Id.* at § 8.7(d).  Plaintiff received his notification of benefit award and right to appeal via letter

from Defendant dated May 4, 2022.  DSMF ¶ 39 ("If you disagree with the amount or the type of

benefit awarded to you, you have the right to file a written appeal to the Appeals Committee of

the Board of Trustees within 60 days . . . from the date you receive this letter").  It is indisputable

that Plaintiff did not engage in this appeals process as required under the Plan prior to filing this

action in federal court.  As stated above, Defendant notified Plaintiff of its benefit determination

-- $1,289.35 in monthly benefits – on May 4, 2022.  DSMF ¶ 39.  The same communication

advised Plaintiff that he could submit a written appeal in accordance with the Plan within 60

days of May 4, 2022 if he disagreed with the benefit award.  *Id.*  Plaintiff has begun receiving

monthly payments and has yet to appeal these benefits as required under the Plan.  *Id.* at ¶¶ 39–

40.     Plaintiff does not dispute this fact or submit evidence to controvert Defendant's demonstration that no appeal was filed.  Thus, the Court finds that Defendant has sufficiently established that there exists no genuine issue of fact as to Plaintiff's failure to exhaust the administrative remedies made available under the Plan.

The exhaustion requirement under ERISA may be excused in limited situations under which a plaintiff demonstrates that exhaustion would be futile.  *Harrow*, 279 F.3d at 249.  While the Third Circuit recognizes that an exception to the exhaustion requirement applies when "resort to the administrative process [under the ERISA plan] would be futile," it has held that a plaintiff merits this waiver only when the plaintiff makes "a clear and positive showing of futility."  *Id.* (quoting *Berger*, 911 F.2d at 916).  In determining whether to apply the futility the exception, the Court weighs the following factors:  (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the plan administrator to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.  *Harrow*, 279 F.3d at 250.  An analysis of these factors in the instant action does not support waiving the exhaustion requirement.

Under the first factor, it is undisputed that Plaintiff did not "diligently" pursue administrative relief.  Rather than file an appeal, as required under ERISA and the Plan, Plaintiff repeatedly sought intervention and relief via federal court.  *See, e.g.*, *Patient Care Assocs., LLC. V. N.J. Carpenters Health Fund*, No. 10-1669, 2012 WL 1299144, at *5 (D.N.J. Apr. 16, 2012) (granting defendant's motion for summary judgment for failure to exhaust administrative remedies under ERISA where Plaintiff made no attempt to pursue administrative remedies,

beyond phone calls and letters to the plan administrator, prior to improperly filing an action in federal district court).  Accordingly, this factor cuts against application of the futility exception.

Under the second factor, it does not appear to this Court that Plaintiff acted reasonably in seeking immediate judicial review.  Over the several years this litigation has spanned, Plaintiff has repeatedly ignored the claims and appeals procedure as prescribed under the Plan and ERISA.  Even after receiving monthly payments beginning in May 2022, Plaintiff contests the benefit calculation in this Court, rather than seek relief through the Plan's appeals process.  *See Utility Workers Union of Am., Local 601 v. Pub. Serv. Elec. & Gas Co.,* No. 07-2378, 2009 WL 331421, at *4 (D.N.J. Feb. 10, 2009) (finding that plaintiffs did not act reasonably in seeking immediate judicial review because plaintiffs "did not pursue any kind of relief, outside of the instant action).  Thus, this factor similarly weighs against futility.

The third factor requires the Court to consider the existence of a fixed policy denying benefits.  Plaintiff has not identified, nor is the Court aware of, a fixed policy denying benefits by Defendant in the instant dispute.  Moreover, the Pension Fund determined that Plaintiff was entitled to benefits based on his applicable vesting credits, and provided that calculation to Plaintiff with an opportunity to appeal.  *See Harrow*, 279 F.3d at 250 (citing *Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund*, 590 F. Supp. 211, 216 (E.D. Pa. 1984) (holding that plaintiffs must demonstrate that a policy is so fixed that an appeal would serve no purpose)).  Plaintiff has not shown that Defendant's benefits calculation was part of a policy "so fixed" as to warrant an appeal futile.  Accordingly, this factor does not support application of the futility exception.

Pursuant to the fourth factor, the evidence suggests that Defendant appropriately complied with its internal administrative procedures in determining Plaintiff's pension benefits.

Defendant provided the Plan document to Plaintiff and provided a benefit calculation in accordance with that Plan. Plaintiff appears to argue that Defendant used these internal procedures to devalue his pension benefits, but has not provided evidence to substantiate this claim. Thus, there is no genuine dispute that Defendant abided by its internal protocols in furnishing Plaintiff's benefit determination.

Lastly, under the fifth and final factor, Defendants have not testified as to the futility of an administrative appeal. Given that the application of each of these five factors weighs against futility, the Court is persuaded that Defendants have shown an absence of an issue of material fact, and that Plaintiff is unable to demonstrate a genuine issue for trial. Accordingly, summary judgment in favor of Defendant is warranted due to Plaintiff's failure to exhaust administrative remedies under the Plan and ERISA, and Plaintiff's claims are dismissed.

The Third Circuit emphasized the "limited nature" of this case on remand when it explained that the "District Court may wish to conduct proceedings limited to the questions of whether Stampone has exhausted this claim and, if not, whether exhaustion would be futile." *Stampone*, 722 F. App'x at 250. On March 2, 2021, this Court held a conference specifically to discuss whether Plaintiff had exhausted his administrative remedies or if doing so would be futile. ECF No. 155. As a result of this discussion, Defendant provided Plaintiff with a pension application, which he completed and submitted in order to determine his potential benefit amount. ECF Nos 156, 157. Plaintiff informed Defendant and this Court that he intended to finalize the pension application and retire. ECF No. 161. Plaintiff began receiving pension benefits in May 2022 yet continues to avoid engaging the administrative appeals process to challenge his benefit amount. Therefore, upon further proceedings and for the reasons stated

above, the Court is satisfied that there exists no genuine dispute of material fact regarding Plaintiff's failure to exhaust and his inability to qualify for the futility exception.

### C. Defendant Appropriately Calculated Plaintiff's Pension Benefit Amount Under the Terms of the Plan

Even if the Court had found that Plaintiff's ERISA claims were administratively exhausted, Defendant has sufficiently demonstrated that there is no dispute of material fact as to its calculation of Plaintiff's pension benefit amount. In adjudicating claims like Plaintiff's in the instant action, the Third Circuit has held that "breach of contract principles, applied as a matter of federal law, govern claims for benefits due under an ERISA plan.*" Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572 (3d Cir. 2006) (internal quotations omitted). Applying these principals, "[t]he written terms of the plan documents control." *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d. Cir. 1995); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA's statutory framework "is built around reliance on the face of the written plan documents."). Therefore, the Court is "required to enforce the Plan as written." *Bauer v. Summit Bancorp*, 325 F.3d 155, 160 (3d Cir. 2003); *see also Henglein v. Colt Indus.*, 260 F.3d 201, 215 (3d Cir. 2001) (stating that "the courts are not at liberty to rewrite the terms of an ERISA plan").

Here, the Plan's plain language unambiguously vests the administrator of the Plan with "discretionary authority" to "determine whether and to what extent Participants and Beneficiaries are entitled to benefits and to construe disputed or doubtful Plan terms." *See* ECF No. 180-4 (Plan at § 8.6(d)(3)). Moreover, the Plan expressly states that the administrator "shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously." *Id.* at § 8.6(c); *see also Firestone Tire & Rubber Co. v.*

16

*Bruch*, 489 U.S. 101, 115 (1989) (applying the arbitrary and capricious standard to ERISA claim where pension plan administrator was given discretionary authority to determine benefit eligibility and construe the plan's terms). Accordingly, under the terms of the Plan, this Court determines that the Pension Fund's calculation of Plaintiff's pension benefit amount was not arbitrary and capricious.

Defendant has sufficiently described the information and methodology used in calculating Plaintiff's vesting credits and benefit amount. Defendant points to Stampone's Pension Fund Statement (ECF No. 180–6, Cordero Declaration, Ex. D) to demonstrate his hours worked and number of vesting credits earned through Defendant's Plan. DSMF ¶¶ 22–23. Stampone's Pension Fund Statement unambiguously reflects that Plaintiff earned .25 vesting credits for working 453.5 hours in 2005; .25 vesting credits for working 399 hours in 2006; .25 vesting credits for working 336 hours in 2007; .25 credits for working 543.5 hours in 2010; .5 vesting credits for working 623.5 hours in 2011; .25 vesting credits for working 303 hours in 2012; .25 vesting credits for working 370 hours in 2013; .5 vesting credits for working 830.5 hours in 2014; .25 credits for working 469 hours in 2015; 1 vesting credit for working 1,292.5 hours in 2016; 1 vesting credit for working 1,177 hours in 2017; .5 vesting credits for working 682.5 hours in 2018; and 1 vesting credit for working 939.5 hours in 2019. ECF No. 180–6, Cordero Declaration, Ex. D; DSMF ¶¶ 21–23. Plaintiff did not earn any vesting credit in years he worked fewer than 300 hours as indicated in his Pension Fund Statement – 1986, 2004, 2008, 2009, and 2020. *Id.* Plaintiff's Pension Fund Statement further shows the application of the formulas used to calculate his monthly benefit, which resulted in a monthly benefit award of $1,289.35. DSMF ¶¶ 28–29. Thus, Defendant has pointed to evidence that unequivocally

demonstrates its calculation of Plaintiff's pension benefit amount was conducted in accordance with the Plan.

Plaintiff's argument that Defendant improperly calculated his pension benefit is unavailing. Plaintiff appears to argue that the Plan's calculation of vesting credits violates ERISA because it computes vesting credits annually, rather than on a cumulative basis where total hours worked may roll over from year to year. ECF No. 72 at 10–11. Under this framework, Plaintiff urges the Court to consider his total hours worked while participating in the Plan over more than twenty years, regardless of whether he met the 300-hour threshold to earn any vesting credit in a calendar year, and without consideration to the 870-hour threshold required to earn a full vesting credit in a year. *Id.* Plaintiff's supposition has no basis under the plain terms of the Plan. As explained above, the Plan explicitly requires the calculation of vesting credit on an annual basis. DSMF ¶ 20; *see also* Plan § 3.2(b)(2). Moreover, the Plan mandates that an individual work at least 300 hours in a calendar year to achieve any vesting credit, yet Plaintiff asks the Court to determine that he earned vesting credits in years where he did not meet the 300-hour threshold. DSMF ¶ 21; ECF No. 72 at 11. On the whole, Plaintiff fails to put forth evidence showing any genuine dispute as to the Defendant's calculation of his benefit amount, nor that the calculation was arbitrary and capricious. *See, e.g.*, *Univ. Spine Ctr. v. Anthem Blue Cross of California*, No. 19-12639, 2020 WL 814181, at *5 (D.N.J. Feb. 18, 2020) ("The District of New Jersey has dismissed ERISA claims where plaintiffs failed to cite to specific plan provisions: [i]t is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits.") (internal quotation omitted). Accordingly, Defendant has undisputedly shown that it correctly applied the written terms of the Plan, and thus summary judgment is warranted.

## V.      <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's motion for summary judgment (ECF No. 178) is denied and Defendant's motion for summary judgment (ECF No. 179) is granted.   An appropriate Order accompanies this Opinion.

**DATED**:  February 28, 2023

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**